UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYRUS SATARZADEH individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FUSION CONNECT, INC., MATTHEW D. ROSEN, KEVIN M. DOTTS, KEITH SOLDAN,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Jury Trial Demanded |

Plaintiff Cyrus Satarzadeh ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Fusion Connect, Inc. ("Fusion" or the "Company") common stock between August 14, 2018 and April 2, 2019, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Fusion purports to be in the business of cloud communications, cloud connectivity, cloud infrastructure, cloud computing, and managed cloud-based applications solutions. Fusion

purports to offer domestic and international voice services to telecommunications carriers worldwide.

3. During the Class Period, and unbeknownst to investors, Fusion misled investors by overstating its earnings (or understating its net loss), including for the quarters ending June 30, 2018 and September 30, 2018, by failing to properly account for and capitalize costs associated with the customer on-boarding process.

4. On April 2, 2019, Fusion announced that its Q2 and Q3 2018 financial statements could no longer be relied upon and would have to be restated. The Company also announced that it would not be able to file its 2018 annual report by the April 2, 2019 extension deadline.

## JURISDICTION AND VENUE

5. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). Fusion stock trades on the NASDAQ, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

9. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ, a national securities exchange.

**PARTIES**

10. Plaintiff Cyrus Satarzadeh is an individual residing in Saint Louis, Missouri. Plaintiff acquired and held shares of the Company at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

11. Defendant Fusion Connect, Inc. was incorporated pursuant to the laws of Delaware and maintains its principal executive offices in New York, New York. The Company's stock trades on the NASDAQ under the ticker symbol "FSNN".

12. Defendant Matthew D. Rosen ("Rosen") has been the Chief Executive Officer of Fusion since March 2006.

13. Defendant Kevin M. Dotts ("Dotts") was the Executive Vice President, Chief Financial Officer and Principal Accounting Officer of Fusion from February 2017 to August 2018.

14. Defendant Keith Soldan ("Soldan") has been the Chief Financial Officer and Principal Accounting Officer of Fusion since August 2018.

15. Collectively, Rosen, Dotts, and Soldan are referred to throughout this complaint as the "Individual Defendants".

16. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants

authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

17. On May 4, 2018, Fusion closed an acquisition of the cloud and business services business of Birch Communications Holdings, Inc. ("Birch"). The acquisition was completed through a merger of a wholly-owned subsidiary of Fusion with and into Birch.

18. As part of such an acquisition, it would be customary for executives, including the Individual Defendants, to conduct substantial due diligence into Birch, including into its accounting.

19. For accounting purposes, the Birch Merger was purportedly treated as a "reverse acquisition" under U.S. generally accepted accounting principles and Birch was treated as the accounting acquirer. Accordingly, Birch's historical results of operations replaced Fusion's historical results of operations for all periods prior to the Birch Merger and, the Company's Quarterly Reports on Form 10-Q for the periods ended June 30, 2018 and September 30, 2018, discussed below, included the results of operations of the combined company since the Birch Merger.

20. The Class Period begins after trading closed on August 14, 2018. On that date Fusion filed its Form 10-Q for the period ended June 30, 2018, which stated in pertinent part:

**Fusion Connect, Inc. and Subsidiaries**
**Unaudited Condensed Consolidated Statements of Operations and Comprehensive Loss**
(in thousands)

|  | For the Three Months Ended June 30, | | For the Six Months Ended June 30, | |
|---|---|---|---|---|
|  | **2018** | **2017** | **2018** | **2017** |
| **Revenue** | $ 120,803 | $ 116,677 | $ 223,714 | $ 231,743 |
| Cost of revenue (exclusive of depreciation and amortization, shown below) | 66,189 | 63,039 | 121,316 | 125,899 |
| **Gross Profit** | 54,614 | 53,638 | 102,398 | 105,844 |
| **Operating expenses:** | | | | |
| Selling, general and administrative | 43,001 | 29,009 | 66,767 | 61,334 |
| Depreciation and amortization | 16,712 | 17,625 | 31,441 | 33,642 |
| Impairment losses on intangible assets | - | - | 2,314 | - |
| Foreign currency loss (gain) | 241 | (131) | 511 | (166) |
| Total operating expenses | 59,954 | 46,503 | 101,033 | 94,810 |
| Operating (loss) income | (5,340) | 7,135 | 1,365 | 11,034 |
| **Other (expense) income:** | | | | |
| Interest expense, net | (17,608) | (11,852) | (29,370) | (21,481) |
| Loss on debt extinguishment | (14,414) | - | (14,414) | - |
| Other (expense) income | (211) | (28) | (168) | 50 |
| Total other expense | (32,233) | (11,880) | (43,952) | (21,431) |
| Loss before income taxes | (37,573) | (4,745) | (42,587) | (10,397) |
| Income tax benefit (expense) | 3,872 | 44 | 4,869 | (1,354) |
| Net loss from continuing operations | (33,701) | (4,701) | (37,718) | (11,751) |
| Net income (loss) from discontinued operations | 15,179 | (4,743) | 6,218 | (8,133) |
| Net loss | (18,522) | (9,444) | (31,500) | (19,884) |
| Other comprehensive income (loss): | | | | |
| Cumulative translation adjustment | (655) | 44 | (1,451) | (256) |
| Comprehensive loss | $ (19,177) | $ (9,400) | $ (32,951) | $ (20,140) |
| Net loss from continuing operations | (33,701) | (4,701) | (37,718) | (11,751) |
| Preferred stock dividends (see note 5) | (787) | - | (787) | - |
| Net loss attributable to common stockholders | $ (34,488) | $ (4,701) | $ (38,505) | $ (11,751) |
| Basic and diluted loss per common share from continuing operations | $ (0.59) | $ (0.19) | $ (0.92) | $ (0.47) |
| Basic and diluted loss per common share from discontinued operations | $ 0.26 | $ (0.19) | $ 0.15 | $ (0.32) |
| Basic and diluted weighted average common shares outstanding | 58,248 | 25,161 | 41,796 | 25,161 |

The accompanying notes are an integral part of these Condensed Consolidated Financial Statements.

2

21.     On November 13, 2018, Fusion filed its Form 10-Q for the period ended September 30, 2018, which stated in pertinent part:

**Fusion Connect, Inc. and Subsidiaries**
**Unaudited Condensed Consolidated Statements of Operations and Comprehensive Loss**
(in thousands, except per share data)

|  | For the Three Months Ended September 30, | | For the Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
|  | 2018 | 2017 | 2018 | 2017 |
| **Revenue** | $ 143,428 | $ 112,424 | $ 367,142 | $ 344,167 |
| Cost of revenue (exclusive of depreciation and amortization, shown below) | 72,981 | 58,552 | 194,297 | 184,451 |
| **Gross Profit** | 70,447 | 53,872 | 172,845 | 159,716 |
| **Operating expenses:** | | | | |
| Selling, general and administrative | 46,788 | 26,830 | 113,555 | 88,164 |
| Depreciation and amortization | 19,946 | 16,824 | 51,387 | 50,466 |
| Impairment losses on intangible assets | - | - | 2,314 | - |
| Foreign currency (gain) loss | (248) | (295) | 263 | (461) |
| Total operating expenses | 66,486 | 43,359 | 167,519 | 138,169 |
| Operating income | 3,961 | 10,513 | 5,326 | 21,547 |
| **Other (expense) income:** | | | | |
| Interest expense, net | (21,647) | (11,405) | (51,017) | (32,886) |
| Loss on debt extinguishment | - | - | (14,414) | - |
| Other income | 203 | 1 | 35 | 51 |
| Total other expense | (21,444) | (11,404) | (65,396) | (32,835) |
| Loss before income taxes | (17,483) | (891) | (60,070) | (11,288) |
| Income tax (expense) benefit | (148) | (654) | 4,721 | (2,008) |
| Net loss from continuing operations | (17,631) | (1,545) | (55,349) | (13,296) |
| Net income (loss) from discontinued operations | - | (5,160) | 6,218 | (13,293) |
| Net loss | (17,631) | (6,705) | (49,131) | (26,589) |
| **Other comprehensive income (loss):** | | | | |
| Cumulative translation adjustment | 46 | 1,923 | (1,405) | 1,667 |
| Comprehensive loss | $ (17,585) | $ (4,782) | $ (50,536) | $ (24,922) |
| Net loss from continuing operations | (17,631) | (1,545) | (55,349) | (13,296) |
| Preferred stock dividends (see Note 5) | (467) | - | (1,254) | - |
| Net loss attributable to stockholders | $ (18,098) | $ (1,545) | $ (56,603) | $ (13,296) |
| Basic and diluted loss per common share from continuing operations | $ (0.23) | $ (0.06) | $ (1.05) | $ (0.53) |
| Basic and diluted (loss) income per common share from discontinued operations | $ - | $ (0.21) | $ 0.11 | $ (0.53) |
| Basic and diluted weighted average common shares outstanding | 78,435 | 25,161 | 54,143 | 25,161 |

The accompanying notes are an integral part of these Condensed Consolidated Financial Statements.

4

22.     Each of statements identified above were materially false and misleading when issued, as the Company later admitted the process used by certain of its Birch subsidiaries for capitalizing costs associated with the customer on-boarding process and the related judgments and estimates were not designed with sufficient precision, leading to an overstatement of the Company's earnings (or net loss) of between $1.7 million and $2.3 million in the quarter ending on June 30, 2018, and between $3.4 million and $4.1 million in the quarter ending September 30, 2018.

23. Pursuant to the Sarbanes-Oxley Act of 2002, Rosen and Dotts signed certifications with respect to the Form 10-Q for the period ended June 30, 2018 attesting that they reviewed the Form 10-Q prior to filing, that it did not contain untrue statements, that it fairly represented the financial condition of the company, and that the company's internal controls are effective.

24. Pursuant to the Sarbanes-Oxley Act of 2002, Rosen and Soldan signed certifications with respect to the Form 10-Q for the period ended September 30, 2018 attesting that they reviewed the Form 10-Q prior to filing, that it did not contain untrue statements, that it fairly represented the financial condition of the company, and that the company's internal controls are effective.

25. The Company and the Individual Defendants knew that the documents described at paragraphs 20 to 21 would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements and/or their associations with the Company that made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

26. The truth was revealed on April 2, 2019, when Fusion filed on Form 8-K with the SEC, a report which stated in pertinent part:

> **Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**
>
> As previously disclosed, on May 4, 2018, Fusion Connect, Inc. (the "Company") completed the merger (the "Birch Merger") of its wholly-owned subsidiary, Fusion BCHI Acquisition LLC, with and into Birch Communication Holdings,

Inc. ("Birch"), in accordance with the terms of the Agreement and Plan of Merger, dated as of August 26, 2017, as amended. As a result of the Birch Merger, each then existing subsidiary of Birch became an indirect wholly-owned subsidiary of the Company. For accounting purposes, the Birch Merger has been treated as a "reverse acquisition" under U.S. generally accepted accounting principles and Birch has been treated as the accounting acquirer. Accordingly, Birch's historical results of operations have replaced the Company's historical results of operations for all periods prior to the Birch Merger and, the Company's Quarterly Reports on Form 10-Q for the periods ended June 30, 2018 and September 30, 2018 (the "Original Filings") included the results of operations of the combined company since the Birch Merger.

In connection with the first audit of the Company's financial statements post Birch Merger, the Company determined that the process used by certain of its Birch subsidiaries for capitalizing costs associated with the customer on-boarding process and the related judgments and estimates were not designed with sufficient precision. As a result, the Company identified accounting errors which resulted in an understatement of expenses for the applicable periods (the "Accounting Errors"), which are currently anticipated to be material to the impacted periods. The Company is correcting the Accounting Errors and will be restating its interim financial statements included in the Original Filings and its annual financial statements for the fiscal year ended December 31, 2017 to be included in the Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 Form 10-K").

On April 1, 2019, the Audit Committee of the Company (the "Audit Committee") concluded, acting upon the recommendation of management and following discussions with EisnerAmper LLP, the Company's independent public accountants ("Eisner"), that due to the Accounting Errors, the previously issued financial statements of the Company for the year ended December 31, 2017, and for the periods contained in the Original Filings and other financial communications for those periods should no longer be relied upon.

On April 2, 2019, the Company also filed an amendment to its Form 12b-25 filed with the U.S. Securities and Commission on March 15, 2019 to indicate that the Company will not be able to file the 2018 Form 10-K by the April 2, 2019 extension deadline. This further delay in filing the 2018 Form 10-K is due to the Company requiring additional time to gather information and complete its analysis of the impact of the Accounting Errors. In addition, McNair, McLemore, Middlebrooks & Co., LLC, Birch's public accounting firm prior to the completion of the Birch Merger, has not completed its audit procedures related to the restatement of Birch's 2017 financial statements resulting from the Accounting Errors.

Although the Company has not determined the precise amount of the required restatements, it currently estimates such amounts to range between $2.3 million and $3.0 million with respect to the year ended December 31, 2017 and ranging from $3.4 million and $4.1 million and $1.7 million and $2.3 million with

respect to the quarters ended September 30, 2018 and June 30, 2018, respectively. The actual amount of the restatements will not be known until all audit work is completed. The Company can provide no assurances that the estimates provided above will not change. These adjustments will have no cash impact but will reduce the Company's EBTIDA for the applicable periods by an amount equal to the required restatements.

27. Following publication of this report, Fusion's stock price fell drastically, from $1.20 at close on April 2, 2019 to $0.22 at close on April 3, 2019, a drop of more than 80%.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Fusion common stock between August 14, 2018, and April 2, 2019, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

29. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. More than 81 million Fusion shares trade on the NASDAQ.

30. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

      e.   Whether the price of the Company's stock was artificially inflated; and

      f.   The extent of damage sustained by Class members and the appropriate measure of damages.

31.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

32.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

33.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

34.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

      a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

      b.   The omissions and misrepresentations were material;

      c.   The Company's common stock traded in efficient markets;

      d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

      e.   Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and

the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

35. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

36. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

37. The April 2, 2019, Form 8-K was filed with the SEC after the market had closed. Fusion shares, which closed trading at $1.20 per share on April 2, 2019, closed trading on April 3, 2019 at $0.20, a decline of more than 80%. This decline was attributable to the disclosures set out in the April 2, 2019 Form 8-K alleged in paragraph 26.

## CAUSES OF ACTION

### Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

38. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

39. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

41. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

### Count II
### Violation of § 20(a) of the Exchange Act
### (Against The Individual Defendants)

42. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

April 16, 2019                                                      Respectfully submitted,

/s/ Greg Blankinship, Esq.
**FINKELSTEIN BLANKINSHIP**
**FREI-PEARSON & GARBER LLP**
Greg Blankinship
445 Hamilton Ave, Suite 605
White Plains, NY 10601
Tel: 914-298-3281
Fax: 914-824-1561
Gblankinship@fbfglaw.com

*Local Counsel for Plaintiff*

Additional Counsel:

**BLOCK & LEVITON LLP**
Jeffrey C. Block, jeff@blockesq.com
Jacob A. Walker, jake@blockesq.com (*pro hac vice* motion to be filed)
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax